# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN

JEREMY MARTIN

Case No:

Hon:

-V-

DEPUTY SCOTT EDDY, INDIVIDUALLY,
DEPUTY MARK GANEY, INDIVIDUALLY
DEPUTY RYAN LOTAN, INDIVIDUALLY,
DEPUTY JEFFREY MORGNER, INDIVIDUALLY
DEPUTY JAMES COTE, INDIVIDUALLY,
DEPUTY R. SUMMERS(2310),
DEPUTY RICHARD RACKLEY, INDIVIDUALLY,
SARAH SHEEHAN, INDIVIDUALLY,
LPN DANIELLE VEATCH, INDIVIDUALLY

        Defendants

_____

HALL MAKLED, P.C.
By: Amir I. Makled (P76306)
Attorneys for Plaintiff
23950 Princeton St.
Dearborn, MI 48124
(313) 788-8888
Amakled@Hallmakled.com

_____

There was a previous civil action between these parties arising out of the same transaction or occurrence as alleged in the Complaint, which was pending in the Eastern District of Michigan bearing Case No. 4:22-cv-10559 that was dismissed without prejudice by way of stipulation.
/s/ Amir Makled

## COMPLAINT AND JURY DEMAND

**NOW COMES**, JEREMY MARTIN, hereinafter Plaintiff by and through his attorneys HALL MAKLED, P.C. and in support of Plaintiff's Complaint states upon this Honorable Court as follows:

## JURISDICTIONAL ALLEGATIONS

1.      This Court has original jurisdiction over the claims that arise under the Fourth/Fourteenth, and Eighth Amendments to the United States Constitution and brought pursuant to 28 U.S.C. §§ 1983 and 1988. This Court has supplemental jurisdiction over the state law claims Pursuant to 28 U.S.C. § 1367 because they are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy, and the state law claims do not substantially predominate the federal claims.

2.  This Court has diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 because Plaintiff and all Defendants' are citizens of different states and the amount in controversy well exceeds

$75,000. 00.

3. This Court has personal jurisdiction over all Defendants.

4. Venue is proper in this Court under 28 U.S.C. 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District.

## **PARTIES**

5. That JEREMY MARTIN, Plaintiff, hereinafter, at all relevant times, is a resident of the County of Otsego and the State of Michigan.

6. That Defendant, Deputy Scott Eddy at all times relevant to the within Complaint, a law enforcement officer employed by Oakland County and was at all time relevant to this Complaint acting within the scope of his employment and under Color of law.

7. That Defendant, Deputy Mark Ganey at all times relevant to the within Complaint, a law enforcement officer employed by Defendant Oakland County and was at all time relevant to this Complaint acting within the scope of his employment and under Color of law.

8. That Defendant, Ryan Lotan at all times relevant to the within Complaint, a law enforcement officer employed by Defendant Oakland County and was at all times relevant to this Complaint acting within

the scope of his employment and under Color of law.

9. That Defendant, Jeffrey Morgner at all times relevant to the within Complaint, a law enforcement officer employed by Defendant Oakland County and was at all time relevant to this Complaint acting within the scope of his employment and under Color of law.

10. That Defendant, James Cote at all times relevant to the within Complaint, a law enforcement officer employed by Defendant Oakland County and was at all time relevant to this Complaint acting within the scope of his employment and under Color of law.

11. That Defendant, R. Summers (2310). at all times relevant to the within Complaint, a law enforcement officer employed by Defendant Oakland County and was at all time relevant to this Complaint acting within the scope of his employment and under color of the law.

12. That Defendant, Richard Rackley, at all times relevant to the within Complaint, a law enforcement officer employed by Defendant Oakland County and was at all time relevant to this Complaint acting within the scope of his employment and under Color of law.

13. Defendant Danielle Veatch, LPN, was at all material times a resident of the State of Michigan who was working in her individual

capacity as a licensed practical nurse employed by Wellpath, LLC which contracted with Oakland County to provide healthcare services at the Oakland Jail and was acting under Color of law.

14. Defendant Sarah Sheehan a paramedic, was at all material times a resident of the State of Michigan who was working in her individual capacity as a licensed practical nurse employed by Wellpath, LLC which contracted with Oakland County to provide healthcare services at the Oakland Jail and was acting under Color of law.

## **<u>FACTUAL ALLEGATIONS</u>**

15. Plaintiff incorporates by reference and re-alleges each and every paragraph stated above as if said paragraphs were more fully set forth herein.

16. That on October 31, 2020, Oakland County Deputies were dispatched to 277 Golden Gate, Lake Orion, Mi 48362 for a noise complaint and Disorderly conduct.

17. That upon arrival to the scene, Deputy Scott Eddy, encountered Plaintiff.

18. That Plaintiff was instructed to leave the area and "move on down the road".

19. That Plaintiff was unable to follow the Deputies instruction because the Deputy had his cane which was Plaintiff's property and he was not under arrest or evading a scene of a crime.

20. That Deputy Eddy started to move toward Plaintiff and Plaintiff said, "I can't leave without my cane."

21. That Deputy Eddy deployed his "Taser"; Plaintiff was not resisting, had followed all commands and was not threatening, or under arrest.

22. That Plaintiff was not threatening, did not swing the walking stick, never tried to strike the Deputy.

23. That Plaintiff was arrested for Disorderly Person and Resisting/Obstructing.

24. Plaintiff was transported to and booked into the Oakland County Jail on charges of Disorderly Person and Resisting/Obstructing.

25. When arresting Deputy Scott Eddy pulled the patrol car into the Sallyport, Plaintiff exited the patrol car under his own power.

26. Plaintiff informed the Deputes that he was not wearing his ankle foot orthotic (AFO) brace, to be careful with his leg, as he used the brace for drop foot.

27. When Plaintiff was cleared to be lodged, deputies brought him into

the jail to the booking window where Sgt. Michelle Fransisco offered Plaintiff a breathalyzer, which he refused.

28. After several times of Sgt. Fransisco attempting to administer the breathalyzer, Plaintiff cursed at Sgt. Fransisco; calling her a "Bitch."

29. After Plaintiff called the Sgt a "Bitch", Deputy Mark Ganey pushed Plaintiff's face flush against the window with his hand.

30. Deputy Ganey gave Plaintiff an order to walk and stated; "You want to call our Sgt. a Bitch, you're about to get fucked up."

31. At no time upon entering the jail, while at the booking window, or anytime thereafter, was a pat down search conducted.

32. Plaintiff was escorted around the corner into DTU cell R-7 specifically to be strip searched.

33. When Plaintiff entered the cell, Defendant Deputies forced Plaintiff on the ground and got on top of him.

34. While Plaintiff was not in handcuffs, Deputy Ganey was holding Plaintiff's hands behind his back and used his hands and body weight to slam Plaintiff's head into the ground and then held his head against the ground while Plaintiff was in a prone position.

35. That Defendant deputies Rackley, Cote, Lotan, Morgner, and

summers from the cell extraction team forcibly held Plaintiff down while he was in a prone position.

36. Defendant Deputy Summers got on top of Plaintiff and used his hands to hold his legs down and put his knees on Plaintiff's Achilles Tendon and ankles with the weight of his body, while Plaintiff was in a prone position.

37. Defendant Deputy Lotan put his knees in Plaintiff's back and used pressure points on Plaintiff, while using his body weight to hold Plaintiff down in a prone position.

38. Defendant Morgner and Rackley held plaintiff down using his body weight and was in control of plaintiff's upper body pinning him in a prone position.

39. Plaintiff was not resisting and posed no threat.

40. Plaintiff began yelling and screaming and asking the deputies to stop hurting him.

41. Plaintiff began to urinate uncontrollably and was in severe pain while the Defendant deputies continued to assault *and* battery Plaintiff; all the while yelling, "How does it feel to be a bitch?"

42. Defendant Deputies ripped Plaintiff's clothes off slamming his foot into the ground.

43. Upon removing his pants and underwear a small, red multipurpose tool fell out of his pocket.

44. Defendant Deputies started screaming and using more force while on top of him and secured the pocket tool asking him "if he had anything else on him."

45. Deputies then threw some county clothing in the cell and told Plaintiff to remain on the ground while officers exited the cell; Plaintiff complied.

46. After Deputies left (DTU) cell R-7 Plaintiff observed blood all over the cell where Plaintiff's feet were after being slammed on the ground.

47. Plaintiff looked closely at his foot and could see he was severely injured. 50.Plaintiff could see the bone and summoned Deputy Charles Johnson to cell R-7 asking him to call medical, stating that he was severely injured.

48.   Deputy Charles Johnson stated he would call medical.

49.   Plaintiff wiped blood on the window of the cell and kept demanding medical attention from anyone who came to talk to him.

50.   .Defendant Sheehan was the person in charge of providing medical care following the injuries and failed to examine plaintiff or provide care for his injuries.

51.    Defendant Sheehan came to speak to Plaintiff and showed his injuries to her and requested to be examined in medical.

52.    Plaintiff told Defendant Sheehan that he was in serious pain and needed pain medication, which she never provided him with.

53.    Defendant Sheehan stated there was another cell extraction going on and that the jail was in lockdown for the cell extraction team again, that he would have to wait.

54.    Defendant Sheehan walked away after speaking with the Plaintiff and never returned or provided any medical attention for his injuries and failed to examine his injuries in medical.

55.    Defendant Sheehan cleared Martin of any injuries when she could see plaintiff was severely injured. (See prisoner incident report CR.No 200219412) 55.Plaintiff was not medically screened, as required, within 8 hours according to Wellpath, LLC, a/f/a Correct Care Solutions (CCS) CCS Policy and Procedure, No. J-E-02 "Receiving Screening, within 8 hours of arrival at the facility. 56.Plaintiff continued to show his injuries in the window of his cell to officers since he can be seen on camera wiping blood on the cell window.

56.    Plaintiff was never afforded the right to Emergency Medical Care or

to be assessed as required by CCS Policy and Procedure, No. J-#-08 "Emergency Services" and National Commission on Correctional Healthcare (NCCHC), Standards in Jails.

57. After not receiving Medical Care upon Emergency request by Plaintiff he fell asleep until November 1st, 2020.

58. Sometime during the A.M. Shift on 11/1/2020, Plaintiff was allowed out of the (DTU) room and taken to get photographs in the booking room.

59. While Plaintiff was in the booking room he requested medical attention again because he was still bleeding and needed band-aids since he never received care the day prior.

60. Defendant Veatch came to the booking/photograph room and plaintiff told her he was in serious pain, and looked at plaintiff's injuries and medical notes down and denied plaintiff treatment for his injuries.

61. Defendant Veatch was the nurse on duty in charge of providing medical care on November 1st, 2020.

61. Defendant Licensed Practical Nurse, L.P.N, Nurse Danielle Veatch brought Plaintiff band-aids and an unknown pink solution believed to be soap.

62. Plaintiff asked to be treated in medical and Danielle stated, "You are

a big boy, clean it yourself; I'm not taking you to medical."

63. Plaintiff told Danielle that it didn't look good and that she was denying care to a serious injury. She could see there was blood all over Plaintiff's foot and refused to take him to medical and denied him care.

64. Defendant Veatch stated there were no doctors at the jail during the weekend, and that he would be placed on a list to see the doctor on Monday.

65. Plaintiff was then escorted to his housing unit in the Annex after booking photographs were taken.

66. On November 2nd, sometime during the early morning shift, Plaintiff was called to the medical clinic to see Dr. Joann Mitchell.

67. Upon meeting with Dr. Joann Mitchell, Medical Director, DO, who provides medical services for Wellpath LLC, she determined that Plaintiff needed emergency treatment and told deputies that he needed to be transported to the Emergency Room.

68. Shortly after the order from Dr. Mitchell, transport deputies came to the medical clinic and transported Plaintiff to Mclaren Hospital Emergency Room, in Pontiac, Michigan.

69. After being seen by emergency medical staff, the medical staff

informed deputies that Plaintiff needed to be admitted to Mclaren Hospital in Pontiac, Michigan.

70. Plaintiff was told he had a serious medical condition, namely MRSA and stated that a podiatrist would come see him.

71. Upon meeting with Dr. Hussain, he informed Plaintiff that he needed to have a toe amputation and stay in the hospital.

72. Plaintiff was immediately scheduled for surgery.

73. Plaintiff received amputation to his right big toe around November 4th, 2020, while in custody of Oakland County Sheriff's.

74. Plaintiff remained in Mclaren Hospital under Dr's care until November 8th, 2020 when he was discharged.

75. Plaintiff was transported back to the jail by deputies on November 8th and monitored by Dr. Mitchell, medical staff, and scheduled for follow up appointment.

## COUNT I
## FOURTH AND FOURTEENTH AMENDMENT VIOLATION AS TO DEFENDANT SHEEHAN AND VEATCH

76.  Plaintiff incorporates by reference and re-alleges each and every paragraph stated above as if said paragraphs were more fully set forth herein.

77. Plaintiff's constitutionally protected rights that Defendant medical staffers violated include the following:

    a. his right to liberty protected in the substantive component of the Due Process Clause of the Fourteenth Amendment, which includes personal safety, freedom from captivity, and right to medical care and protection

    b. his right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment.

78. Defendant Sheehan exercised deliberate indifference by failing to render medical care to Plaintiff's injuries following him being injured in a use of force by deputy Defendants, when she knew or should have known he was injured.

79. Defendant Sheehan failed to provide even medical supplies to stop the bleeding after Plaintiff showed his injuries through cell R-7 leaving him with nothing to care for his injuries.

80. Defendant Sheehan left Plaintiff in a dirty cell exposing him to risk of infection and failed to provide Plaintiff with pain medication after he said he was in excruciating pain.

81. Defendant Veatch exercised deliberate indifference by failing to

render medical care to Plaintiff's injuries following him being injured in a use of force by deputy Defendants, when she knew or should have known he was injured.

82. Defendant Veatch failed to provide even medical supplies to stop the bleeding after he showed her his injuries in the booking photograph room. Leaving him with nothing to care for his injurie.

83. As a direct and proximate result of Defendant medical staffers conduct, Plaintiff suffered physical and emotional injury, loss of freedom, and other constitutionally protected rights described above.

**WHEREFORE**, Plaintiff seeks judgment against Defendants', jointly and severally, in whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, to which Plaintiff is entitled which is reasonable, fair and just; plus costs, interest and attorney fees, together with exemplary and/or Punitive Damages

## COUNT II
## VIOLATION OF 42 USC 1983 AS TO ALL NAMED DEPUTY SHERIFF DEFENDANTS

84. Plaintiff incorporates by reference and re-alleges each and every paragraph stated above as if said paragraphs were more fully set forth herein.

85.	Plaintiff's constitutionally protected rights were violated by the named Deputy Defendants.

86.	That Defendant Deputy Sheriff's Plaintiff's right to liberty protected in the substantive component of the Due Process Clause of the Fourteenth Amendment, which includes personal safety, freedom from captivity, and right to be free from the use of excessive force.

87.	Defendant Deputies, acting under color of state law, took Plaintiff into physical police custody, after alleging that Plaintiff resisted arrest, in doing so, they established a special custodial relationship with Plaintiff giving rise to affirmative duties on their part to secure for him the constitutionally protected rights identified above.

88.	Defendant Deputies violated their affirmative duties by using excessive force in their handling of the Plaintiff and their failure  to render or obtain medical treatment for Plaintiff.

89.	Defendant Deputies, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights. Further, their actions in  searching Plaintiff and using excessive force in  Plaintiff's arrest,  showed  deliberate  indifference  toward  Plaintiff  and  was  a

deprivation of his constitutionally protected rights.

90. Plaintiff made requests for medical treatment and was denied same, with Defendant Deputies failing to take necessary steps and precautions to ensure Plaintiff's medical needs were recognized and tended to.

91. As a direct and proximate result of Defendant Deputies conduct, Plaintiff suffered physical and emotional injury, loss of freedom, and other constitutionally protected rights described above.

**WHEREFORE**, Plaintiff seeks judgment against Defendants', jointly and severally, in whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, to which Plaintiff is entitled which is reasonable, fair and just; plus costs, interest and attorney fees, together with exemplary and/or Punitive Damages.

## COUNT III
## NEGLIGENCE AND DELIBERATE INDIFFERENCE AS TO ALL DEFENDANT DEPUTIES AND WELLPATH EMPLOYEES

92. Plaintiff incorporates by reference and re-alleges each and every paragraph stated above as if said paragraphs were more fully set forth herein.

93. That while Defendant Deputies, using unnecessary and excessive

force to effectuate a search of Plaintiff's person, caused Plaintiff's foot, ankle and specifically big toe to be injured.

94.     That Defendants' further failed to render adequate medical care.

95.     That Defendants' actions were negligent and they exercised deliberate indifference by failing to render medical care to Plaintiff's injuries following him being injured in a use of force by deputy Defendants, when they knew or should have known he was injured.

96.     At all times relevant herein, Defendants' had the following ministerial duties, notwithstanding their standard duty of care:

    a. To obey all statutes, rules, regulations and applicable laws; and

    b. To preserve the peace and protect the lawful rights of citizens.

97.     Defendant Deputies breached the aforementioned duties and were negligent, as defined by statute, to-wit: MCLA 691.1401 as described in MCLA 691.5805,

when they conducted themselves in a manner so reckless as to demonstrate a substantial lack of concern for whether an injury would result in one, some or all of the following particulars:

    a. To obey all statutes, rules, regulations and applicable

laws; and

    b. To preserve the peace and protect the lawful rights of citizens.

98.    As a direct and proximate result of the Defendants' aforementioned wrongful conduct, Plaintiff experienced loss of enjoyment of life, humiliation, and degradation.

    **WHEREFORE**, Plaintiff seeks judgment against Defendants', jointly and severally, in whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, to which Plaintiff is entitled which is reasonable, fair and just; plus costs, interest and attorney fees, together with exemplary and/or punitive damages.

<u>**COUNT IV**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
<u>**AS TO ALL DEFENDANTS**</u>

99.    Plaintiff by reference and re-alleges each and every paragraph stated above as if said paragraph were more fully set forth herein.

100.    Defendants' conduct described herein was extreme and outrageous conduct because it was beyond all possible bounds of decency and could be regarded as atrocious and utterly intolerable in a civilized community and would (and in fact has) cause an average member of the

community to exclaim…."Outrageous!"

101. Defendants' actions described herein were intentional or reckless.

102. Defendants' actions caused Plaintiff severe emotional distress so severe that no reasonable person could be expected to endure it, causing nausea, inability to eat, loss of sleep, inability to concentrate, concern and fear for his safety. *Haverbush v. Powelson*, 217 Mich. App. 228, 234-35 (1996).

**WHEREFORE**, Plaintiff seeks judgment against Defendants', jointly and severally, in whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, to which Plaintiff is entitled which is reasonable, fair and just; plus costs, interest and attorney fees, together with exemplary and/or punitive damages.

## COUNT V
## ASSAULT AND BATTERY AS TO DEFENDANT OAKLAND COUNTY DEPUTIES

103. Plaintiff by reference and re-alleges each and every paragraph stated above as if said paragraph were more fully set forth herein.

104. On October 31, 2020, Defendant Scott Eddy, assaulted and battered Plaintiff when he used his taser on Plaintiff where Plaintiff was not

resisting arrest.

105.   On October 31, 2020, the Oakland County Sheriff Deputies extraction team, Defendants made an intentional and unlawful threat to do bodily injury to Plaintiff by pushing his face against a window, slamming his face to the ground and ultimately causing their body weight to be lodged against Plaintiff's body.

106.   The threat to Plaintiff was made under circumstances that created in him a well-founded fear of imminent peril.

107.   Defendants had the apparent ability to carry out the act if not prevented.

108.   The acts were not prevented, and Defendants willfully and intentionally beat Plaintiff, pushing his face against a window, slamming his face to the ground and ultimately causing their body weight to be lodged against Plaintiff's body pinning

him to the ground in a prone position.

109.   As a direct and proximate result of Defendants' assault and battery of Plaintiff he suffered injury and damage, past, present and future, including the following: pain, suffering, and emotional distress, humiliation, mortification, and embarrassment, medical expense, the

necessity that he undergoes surgery, permanent disability, other injuries and damages and consequences that are found to be related to the assault and battery that develop or manifest themselves during the course of discovery and trial

110.     As a direct and proximate result of the assault and battery, Plaintiff has suffered a loss of society and companionship.

**WHEREFORE**, Plaintiff seeks judgment against Defendants', jointly and severally, in whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, to which Plaintiff is entitled which is reasonable, fair and just; plus costs, interest and attorney fees, together with exemplary and/or punitive damages.

**Submitted By:**

/s/Amir Makled
By: Amir I. Makled (P76306)
    **Attorney for Plaintiff**
23950 Princeton St.
Dearborn, MI 48124
(313) 788-8888

## JURY DEMAND

Plaintiff, Jeremy Martin demands a trial by jury of all the issues in this cause.

**Submitted By:**

/s/Amir Makled
*Attorneys for* Plaintiff
23950 Princeton St.
Dearborn, MI 48124
(313) 788-8888
amakled@hallmakled.com